W. LESLIE ROGERS, PLAINTIFF-APPELLANT, v. COURIER
POST CO., DEFENDANT-RESPONDENT.

Argued May 2, 1949—Decided June 20, 1949.

*Mr. Harry Green* argued the cause for the plaintiff-appellant.

*Mr. Samuel P. Orlando (Messrs. Orlando, Devine & Tomlin,* attorneys) argued the cause for the defendant-respondent.

The opinion of the court was delivered by

ACKERSON, J. This is an action for libel wherein plaintiff seeks compensatory and punitive damages from the defendant for publishing in its newspapers certain defamatory articles imputing to the plaintiff interference with the administration of justice in Pennsauken Township, in the County of Camden. Defendant had a verdict of no cause of action and, from the judgment entered thereon, the plaintiff appeals.

At the times of these·publications the plaintiff resided in the township aforesaid and was treasurer thereof and custodian of its school funds. He was also engaged in the insurance business in the City of Camden, and was a prominent figure in the civic and political affairs of Camden County and a member of the Division of Tax Appeals of this State.

A retraction was demanded pursuant to *R. S.* 2:59–2,·and after defendant's failure to comply therewith, the plaintiff filed his complaint containing six counts, later consolidated into three, all based upon three articles, with bold-faced headlines, substantially alike, appearing in different issues of

defendant's newspapers, the Evening Courier and Morning Post. Each of the consolidated counts incorporates one of these articles in full and asserts that it is libelous and that the publication thereof was induced by the personal ill will of the defendant towards the plaintiff and was in reckless disregard of the plaintiff's rights.

The substance of these publications purports to be an accurate report of a verbal altercation between the Assistant Prosecutor of Camden County, Anthony Mitchell, and the Chief of Police of Pennsauken Township, Thomas Thorpe, which, it is stated, took place at the close of the State's case in the former Court of Quarter Sessions of Camden County against one Roberts for larceny. The dispute apparently arose because two accomplices of Roberts had not been reported to the prosecutor's office for indictment by the grand jury along with Roberts, but instead had been taken before the local recorder on a disorderly charge and let off with light fines.

The headlines of these articles contain *inter alia,* the following statements: "Officials Fix Charges, Aide Avers in Court. Tells Thorpe Township Conditions are 'Rotten'; Says Rogers 'Gives Orders.'" "Mitchell Hits Pennsauken's Crime 'Fixing.' Rogers 'Gives Orders' in Covering Cases, * * *." The following references to the plaintiff appear in the body of the articles: "Assistant Prosecutor Anthony Mitchell today charged that politicians in Pennsauken township 'covered up' criminal cases handled by the police. Mitchell named W. Leslie Rogers, Republican leader there, as one of those who 'give orders' to the police department." The following also appears: "'* * * the cases Pennsauken police bring in here stink,' Mitchell declared. 'You know this one stinks but you probably can't do anything about it on account of Les.'" Again, "'Why don't you clean up Matchtown?' Mitchell asked. 'That section is full of speakeasies. If you don't know where they are, I suggest that you ask "Pep" Jones or Les Rogers. They probably know.'"

Defendant's answer, after admitting publication, and making other admissions and denials, added five separate defenses,

all of which, except the second, pleaded various forms of qualified privilege.

Plaintiff's demand for a bill of particulars respecting three of the defenses was denied and exception taken. He thereupon filed his reply to the defendant's answer, denying the allegations of the separate defenses and reserving the right to move to strike them at or before trial as insufficient in point of law, failing to state sufficient facts, alleging conclusions of fact and law, and repetitious. Such a motion was made at the inception of the trial and denied, except as to the second defense which was stricken for the reason last stated.

■ Obviously the references to the plaintiff in the foregoing articles and the headlines thereto are defamatory *per se*. *Cf. Garven v. Finch*, 97 *N. J. L.* 329 (*E. & A.* 1921); *McDermott v. Evening Journal Ass'n*, 43 *Id.* 488 (*Sup. Ct.* 1881); affirmed, 44 *Id.* 430 (*E. & A.* 1882); *Hand v. Winton*, 38 *Id.* 122 (*Sup. Ct.* 1875); *Johnson v. Shields*, 25 *Id.* 116 (*Sup. Ct.* 1855); *Kelly v. Hoffman*, 137 *Id.* 698, 61 *A.* 2d 143, 144 (*E. & A.* 1948); 53 *C. J. S.* (*Libel & Slander*), § 13, *p.* 57; *Ibid.*, § 121, *p.* 199. At the trial the defendant did not attempt to prove the truth of such statements but did prove that the publications were accurate reports of what was said in the heated colloquy between the Assistant Prosecutor and the Chief of Police, and relied entirely on the asserted privileges, presently to be considered, as complete defenses with respect thereto.

After all of the evidence was in the plaintiff moved for a directed verdict in his favor respecting defendant's liability, with only the question of damages left for the consideration of the jury, which motion was denied and exception noted.

The first point argued on this appeal is that the trial court erred in refusing to strike the four separate defenses remaining in the defendant's answer, and in denying plaintiff's motion for a directed verdict except as to the assessment of damages.

The first separate defense claimed a qualified privilege because the words so published related to matters of public

interest and concern, and to the public acts of public officials, and that the allegations of fact were true in substance and in fact, and any expressions of opinion were fair comment thereon made in good faith and without malice.

■ ■ In cases where the alleged libelous matter contains both statements of fact and comment thereon, it is proper to plead in this manner. Such a pleading is not regarded as setting up two defenses in one plea—justification (truth) and fair comment, since the latter depends on the former. Only the defense of fair comment is thus pleaded. *Cf. Foley v. Press Pub. Co.,* 235 *N. Y. Supp.* 340, 350, 226 *App. Div.* 535; *Cohalan v. New York World-Telegram Corp.,* 16 *N. Y. Supp.* 2d 706, 172 *N. Y. Misc.* 1061 (1939); *Odgers on Libel and Slander* (*6th ed.*) *c.* 23, *p.* 514. While this defense could have been pleaded with more particularity, nevertheless, the articles therein referred to are set forth in full in the complaint, containing pertinent facts, and we feel that the criticised plea meets the requirments of modern pleading, and plaintiff was not prejudiced by the court's refusal to strike it at the inception of the trial.

■ ■ Factually, however, this defense was not sustained by the evidence. While matters of public interest and concern, such as the public acts of a public man, if truly stated, are legitimate subjects of criticism, and everyone has the right to comment thereon so long as he does so fairly and without malice, nevertheless, the rule is well settled in this State, and in the great majority of jurisdictions elsewhere, that the defense of fair comment and criticism must be founded on true facts. What is thus privileged, if we may use that term, is the comment and criticism, and not the statement of alleged facts on which they are based, and if one states facts otherwise libelous, he will not be privileged under the plea of fair comment if they are not true. Such a plea does not extend to the making of false statements, and it is no defense that they were mistakenly or honestly made, although such matters may be considered in mitigation of damages. Newspapers have no greater rights or privileges in this respect than ordinary citizens. *Schwarz Bros. Co. v. Eveniny News Pub.*

*Co.,* 84 *N. J. L.* 486, 494-496 (*Sup. Ct.* 1913); *Merrey v. Guardian Printing & Publishing Co.,* 79 *Id.* 177, 184 (*Sup. Ct.* 1909); affirmed, 81 *Id.* 632 (*E. & A.* 1911); *Benton v. State,* 59 *Id.* 551, 560, 561 (*E. & A.* 1896); *State v. Dedge,* 101 *Id.* 131, 140 (*E. & A.* 1924); *Lindsey v. Evening Journal Ass'n,* 10 *N. J. Misc.* 1275, 1280 (*Sup. Ct.* 1932); *Burt v. Advertiser Newspaper Co.,* 154 *Mass.* 238, 28 *N. E.* 1, 13 *L. R. A.* 97 (*Sup. Ct. Mass.* 1891); *Washington Times v. Bonner,* 86 *Fed.* 2d 836, 842 (*U. S. Ct. Appeals Dist. Columbia* 1936); *Ogren v. Rockford Star Printing Co.,* 288 *Ill.* 405, 123 *N. E.* 587, 592 (*Sup. Ct. Ill.* 1919); *Upton v. Hume,* 24 *Or.* 420, 21 *L. R. A.* 493, 41 *Am. St. Rep.* 863 (*Sup. Ct. Or.* 1893); *Restatement, Torts, Vol.* 3, §§ 598, 606, 607, *pp.* 260, 275-285; 33 *Am. Jur.* (*Libel & Slander,* § 79, *p.* 92; *Ibid.,* § 169, *p.* 163; 53 *C. J. S.* (*Libel & Slander*), § 134, *pp.* 218-219.

█ █ The statements concerning the plaintiff in the articles before us purport to be quotations of the libelous assertions of a third person attributing, at least, disreputable and degrading conduct to the plaintiff, the truth of which there has been no attempt whatever to prove. Therefore the plea of fair comment thereon, if there was any comment as such, affords no protection under the rule hereinabove stated. The defendant apparently labors under the misapprehension that, under this plea, it may justify these publications merely by proving that it accurately and fairly reported, without malice, what was said by a third person concerning the plaintiff regardless of the occasion of such utterance. However it is now settled by the great weight of authority that the repetition of libelous statements by others is not *per se* justifiable. *Hartley v. Newark Morning Ledger Co.,* 134 *N. J. L.* 217, 220 (*E. & A.* 1946); *Schwarz Bros. v. Evening News Pub. Co., supra,* 84 *N. J. L. p.* 490; *Stuart v. News Pub. Co.,* 67 *Id.* 317 (*E. & A.* 1901). *Vide, Lancour v. Herald & Globe Ass'n,* 111 *Vt.* 371, 17 *A.* 2d 253, 132 *A. L. R.* 486, 492 (*Sup. Ct. Vt.* 1941); *Restatement, Torts, Vol.* 3, § 598, *pp.* 261-263, *comments* (*b*) and (*d*); 33 *Am. Jur.* (*Libel & Slander*), § 95, *p.* 106; 53 *C. J. S.* (*Libel & Slander*), § 121,

*p.* 197; *Ibid.,* § 86, *p.* 138. The first separate defense therefore falls.

The second separate defense, as already observed, was stricken by the court at the trial.

The third separate defense claims, in effect, a qualified privilege on the assertion that the words and language complained of related to a full, fair and impartial report of a judicial proceeding.

While viewed from the standpoint of adjective law we consider this pleading sufficiently stated to sustain the court's refusal to strike it at the beginning of the trial, nevertheless, the claimed privileged occasion upon which it is rested was not established by the evidence produced.

A full, fair and accurate report of a judicial proceeding is qualifiedly privileged, although the report contains matters that would otherwise be defamatory and actionable, and no action will lie therefor except on proof of malice in making it. 53 *C. J. S.* (*Libel & Slander*), § 127, *p.* 204; 33 *Am. Jur.* (*Libel & Slander*), § 154, *p.* 149. However, the protection of this privilege does not extend to reports of defamatory statements not made in the actual course of a judicial proceeding, and the report must not contain defamatory observations and comments from any quarter whatsoever, in addition to what forms properly the legal proceeding. *Vide, McDermott v. Evening Journal Ass'n, supra; Dorr v. United States,* 195 *U. S.* 138, 49 *L. Ed.* 128, 134, 24 *S. Ct.* 808 (*U. S.* 1903). So oral statements made after the legal proceeding has been concluded, or after the court has adjourned, although uttered in a court room, are no part of a judicial proceeding and not protected by the privilege under consideration. *Vide,* 53 *C. J. S.* (*Libel & Slander*), § 127, *p.* 206; *Ibid.,* § 123 (*b*), *p.* 202; *Note,* 155 *A. L. R.* 1361; 33 *Am. Jur.* (*Libel & Slander*), § 155, *p.* 151.

The uncontradicted proofs show conclusively that all of the statements referring to the plaintiff, whether in the headlines or in the bodies of the articles, and hereinabove quoted, were made after the Roberts case had been concluded for the day and the court had adjourned. The only witnesses

called with respect to this subject testified, that while all of the statements about the plaintiff were made partly in the court room and partly in the judge's chambers, nevertheless they were all made after the court had adjourned and the judge had left the court house.

Obviously these statements were not made in the course of a judicial proceeding, nor were they subject to judicial action or control, and therefore the third separate defense failed. Parenthetically we deprecate the use of the judge's chambers for the purposes and under the circumstances revealed by the testimony.

The fourth separate defense claims a qualified privilege because "* * * the words and language complained of * * * related to an official statement made by * * *, Assistant Prosecutor * * *, in the prosecution of certain judicial proceedings then and there pending before the Criminal Court of Camden County."

What has been said already with reference to the third separate defense is applicable here. The defamatory references to the plaintiff were not made by the Assistant Prosecutor during the "prosecution" of any judicial proceeding, nor did they constitute an "official statement," either as generally understood or within the intent of *R. S.* 2:59–1, presently to be discussed. This pleading is not only insufficient in law but factually unsupported as well.

The fifth separate defense is based upon *R. S.* 2:59–1 which extends the qualified privilege attaching to the publication of judicial proceedings, to the publication in newspapers of "official statements issued by police department heads, county *prosecutors* and coroners in investigations in progress or completed by them," etc. (Italics supplied.) This statute is not helpful to the defendant for it applies only to statements issued by the heads of the respective departments, and not by subordinates therein. The evident purpose of this statute is to centralize responsibility with respect to such important matters. *Vide, Nunnally v. Press Pub. Co.,* 96 *N. Y. Supp.* 1042, 110 *App. Div.* 10 (*N. Y. App. Div.* 1905); 53 *C. J. S.* (*Libel & Slander*), § 129, *p.* 210.

This defense is therefore insufficient in law and it was error not to have stricken it on the motion made below. Furthermore there was no evidence that the Assistant Prosecutor was engaged in making or had completed such an investigation.

Therefore as the case stood when the evidence was in, there were no issues to be submitted to the jury except the question of damages, and the court erred in denying plaintiff's motion directed to that end.

While this of itself requires the reversal of the judgment below, nevertheless, as a new trial will be required, we will proceed to dispose of the additional questions raised by the appellant.

It is argued that there was error in denying plaintiff's motion for a bill of particulars relating to the third, fourth and fifth separate defenses. Under the practice then prevailing the exercise of the power to order a bill of particulars was discretionary, and was granted only where the court was satisfied that justice required the furnishing of the information sought. *Cantor v. Public Service Ry. Co.,* 10 *N. J. Misc.* 1285, 1288 (*Sup. Ct.* 1923); *Waller v. Bender,* 22 *Id.* 44 (*Sup. Ct.* 1943). The publications in question were fully set up in the complaint, and the facts with regard to the three defenses were as much in the possession of the plaintiff or available to him as they were to the defendant. The record discloses no prejudice by reason of the failure to supply the particulars, and we find no abuse of discretion in the court's refusal to order them. Bills of particulars have since been superseded by the provisions of *Rule* 3 :12–5.

The plaintiff also argues that the court erred in charging defendant's request No. 20 to which action exception was noted. We will deal with this requested charge in its several parts. In charging it the court said: "In determining whether or not there has been any express malice on the part of the defendant, * * *, you should take into consideration the fact that the defendant is a newspaper and that it has the right to comment on the acts of public officials, * * *." We pause to observe that this is not a correct state-

ment of the law, since, as we have found, newspapers, as well as individuals, have no right to comment on the conduct of public officials unless such comment is based upon truth or the occasion is privileged. Continuing the request the court charged: "* * * and in considering whether or not the publications * * * were libelous *and* malicious, you should give careful attention to the other publications * . * * which show on many occasions the plaintiff was commended for his acts in public office. The court further charges that the praise and commendation which appeared in any other publications introduced on behalf of the defendant may justify you in finding that there was no malice on the part of the defendants * * * in connection with the articles complained of." (Italics supplied.)

The gist of the entire request, as charged, tended to suggest to the jury that unless the articles were malicious they were not libelous, and that they might find for the defendant if there was no malice. "The absence of a malicious motive may protect against exemplary damages but will not bar the action." *King v. Patterson,* 49 *N. J. L.* 417, 419 (*E. & A.* 1887). An action for compensatory damages does not depend upon the existence of malice or ill will, such evidence of motive or intent is admissible only in the case of punitive damages which are awarded not on the theory of compensation for injury done to reputation and feelings, but as a punishment to the offender, and a warning to others. *Knowlden v. Guardian Printing & Pub. Co.,* 69 *N. J. L.* 670 (*E. & A.* 1903); *Hulbert v. Arnold,* 83 *Id.* 114, 117 (*Sup. Ct.* 1912).

The court erred in charging this request.

We have considered plaintiff's objections to the court's ruling on the evidence and find no merit therein.

The judgment below is reversed and the cause remanded to the Superior Court, Law Division, for a full trial *de novo.*

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and ACKERSON—6.

*For affirmance*—None.